IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) JEANNETTE A. JOHNSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | Case No. 21-cv-00094-JFH-JFJ |
| | ) | |
| (1) LIFE INSURANCE COMPANY OF NORTH AMERICA, | ) ) | ATTORNEY LIEN CLAIMED |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff Jeannette A. Johnson, for her cause of action against Defendant Life Insurance Company of North America ("LINA"), alleges and states as follows:

### I.     Jurisdiction and Venue

1.     Plaintiff brings this action pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to recover benefits due under an employee benefit plan, and to recover costs and attorney's fees as provided by ERISA.

2.     This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.  Under 29 U.S.C. § 1132(f), this Court has jurisdiction without regard to the amount in controversy or the citizenship of the parties.

3.     Venue is properly in this district pursuant to 29 U.S.C. § 1132(e)(2) because the breach took place in this district, and pursuant to 28 U.S.C. § 11391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district.

### II.     Parties and Plan

4.     Plaintiff is a fifty-nine (59) year-old female. She resides in Tulsa, Oklahoma and within this judicial district.

5.     Plaintiff last worked as a Medical Technologist for Hillcrest Hospital South

("HHS") in Tulsa, Oklahoma.

6.      Upon information and belief, HHS is a subsidiary or affiliated company of AHS Management Services, Inc. d/b/a Ardent Health Services ("Ardent").

7.      LINA is a foreign insurance company having its principal place of business in Philadelphia, Pennsylvania.  At all relevant times, LINA was licensed and authorized to sell insurance within the State of Oklahoma and it transacts business within the State of Oklahoma and within this judicial district.

8.      HHS, through its affiliation with Ardent, provided long term disability ("LTD") insurance coverage to its eligible employees through a welfare benefit plan (the "LTD Plan").  At all relevant times, Plaintiff was eligible to participate in the LTD Plan, did participate in the LTD Plan, and was a participant in the LTD Plan within the meaning of 29 U.S.C. § 1002(7).

9.      The LTD insurance coverage applicable to Plaintiff was pursuant to a group LTD insurance policy issued by LINA, Policy Number FLK-0980223 (the "LTD Policy").

10.     The LTD Plan is administered by LINA and benefits under the Plan are paid by LINA.  Benefit determinations with respect to Plaintiff's claim for LTD benefits under the LTD Plan are, and at all times relevant were made by LINA.

11.     LINA was and is a LTD Plan fiduciary within the meaning of 29 U.S.C. § 1002(21)(A).

12.     According to the LTD Policy, LINA "will pay Disability Benefits if an Employee becomes Disabled while covered under this Policy" so long as the employee satisfies the Elimination Period, is under the Appropriate Care of a Physician, and meets all the other terms and conditions of the LTD Policy.

13.     The LTD Policy contains a "Proof of Loss" provision.  The provision does not state

or define the quantum of evidence needed to establish disability.

14. With respect to proving disability, the LTD Policy states that a claimant "must provide the Insurance Company, at his or her own expense, satisfactory proof of Disability before benefits will be paid."

15. The LTD Policy defines "**disability**" as follows:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
>
> 1. unable to perform the material duties of his or her Regular Occupation; and
> 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
>
> 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
> 2. unable to earn 60% or more of his or her Indexed Earnings.

16. The LTD Plan and related LTD Policy do not contain any provision wherein discretion is expressly reserved to LINA to determine benefit eligibility or entitlement.

17. Accordingly, a *de novo* judicial review applies to Plaintiff's claim.

### III.   Allegations Applicable to All Claims

18. Plaintiff began working for HHS in January 2014.

19. Plaintiff elected the LTD coverage made available to her by HHS. The "core" 40% benefit rate coverage was provided by HHS to Plaintiff at no cost.

20. Plaintiff elected additional "buy-up" LTD coverage at a 60% benefit rate. Plaintiff paid for the additional "buy-up" coverage with post-tax withholdings from her HHS paycheck.

21. Plaintiff also had basic and voluntary life insurance coverage pursuant to life

insurance made available to her by HHS.  The life insurance coverage applicable to Plaintiff was pursuant to a group life insurance policy issued by LINA, Policy Number FLX-980400.

22. Plaintiff's annual rate of pay at the time she last worked for HHS was $56,804.80. Accordingly, Plaintiff's monthly wage rate was $4,733.33.

23. On February 21, 2018, Plaintiff was unable to perform the duties of her job due to primary osteoarthritis of the left knee and related pain and numbness.  She underwent a total left knee arthroplasty on February 21, 2018.  Thereafter, Plaintiff continued to have constant pain and was diagnosed with chronic regional pain syndrome ("CRPS").

24. In April 2018, Plaintiff contacted LINA to initiate a LTD claim because she was unable to return to work because of her debilitating condition.

25. LINA initiated an investigation on Plaintiff's claim.  The investigation included the retrieval and review of Plaintiff's pertinent medical records from her treating physicians, Dr. Chad Crawley and Dr. Geoffrey Plumlee, along with pain management and physical therapy records.

26. Upon receipt and review of the same, a LINA-employed nurse opined that Plaintiff's claim was supported by the medical evidence.  The medical evidence confirmed Plaintiff had undergone a left knee replacement surgery and was continuing to experience left leg pain/numbness/weakness along with left foot numbness/weakness.

27. On or about June 15, 2018, LINA approved Plaintiff's LTD claim for payment. The monthly LTD benefit amount was $2,840.00.

28. By letter dated June 21, 2018, LINA also notified Plaintiff that her basic and voluntary life insurance coverage under Policy Number FLX-980400 would continue without payment because Plaintiff's disability claim had been approved.

29. The amount of Plaintiff's life insurance coverage at the onset of her disability in

2018 was $285,000.00 – consisting of $57,000.00 for basic life and $228,000.00 for voluntary life.

30. Plaintiff continued to treat with her various healthcare providers because of the chronic and severe left knee pain and related left-side neuropathic pain. Plaintiff variously underwent: (1) a left-sided lumbar sympathetic plexus block in July 2018; (2) an MRI of the thoracic spine in July 2018, which confirmed nonspecific degenerative changes; (3) an MRI of the lumbar spine in July 2018, which evidenced minimal lumbar spondylosis with no more than mild spinal or foraminal stenosis at any level; and (4) placement of a spinal cord stimulator trial in September 2018.

31. On September 18, 2018, Plaintiff experienced a subacute left frontoparietal ischemic cerebrovascular accident ("CVA"), which was confirmed by an MRI of the brain done on September 19, 2018.

32. In December 2018, another LINA-employed nurse reviewed the accumulated and updated claim file information. The nurse opined that Plaintiff's claim was supported by the medical evidence. And LINA continued to find that Plaintiff was unable to perform the duties of her own occupation.

33. In February 2019, LINA learned that Plaintiff's claim for Social Security Disability Income ("SSDI") benefits had been approved by the Social Security Administration ("SSA"). As reflected in the SSA's Notice of Award, Plaintiff became disabled in February 2018. Plaintiff's initial SSDI monthly benefit amount was $1,542.70.

34. LINA requested a copy of Plaintiff's disability claim file from the Social Security Administration ("SSA") and received the same in or about May 2019.

35. In particular, LINA received a copy of the SSA's Disability Determination Explanation ("DDE") dated January 10, 2019. The DDE reflected a finding that Plaintiff's

symptoms included pain, understanding and memory limitations, sustained concentration and persistence limitations, and social interaction limitations.

36. The DDE reflected a finding that Plaintiff's medically-determinable impairments can reasonably be expected to produce her alleged pain and symptoms.

37. LINA periodically requested and received pertinent medical records and information about Plaintiff's conditions and treatment throughout 2019. In particular, LINA received the medical records of Dr. Kris Parchuri. Dr. Parchuri's records evidenced that Plaintiff underwent a spinal cord stimulator implant on July 2, 2019 because of her chronic pain syndrome secondary to CRPS of the left leg.

38. On September 6, 2019, a third LINA nurse reviewed the accumulated and updated claim file information. The nurse opined that Plaintiff remained "functionally limited with ongoing aphasia and ongoing CPRS of the lower extremity with minimal dorsiflexion of the left foot."

39. On September 17, 2019, Dr. Parchuri performed a thoracic 11 vertebral body augmentation using balloon technique based on Plaintiff's diagnoses of T11 fracture and thoracic back pain.

40. LINA continued to approve Plaintiff's LTD claim for payment because she was unable to perform the duties of her own-occupation. And, by letter dated October 22, 2019, LINA notified Plaintiff that her basic and voluntary group life insurance coverages were continuing at no cost because her disability claim was approved.

41. In December 2019, LINA continued its review of Plaintiff's claim by requesting updated records from her treating physicians and notifying Plaintiff of the impending change in the definition of "disability" to the "any-occupation" definition.

42.     LINA received updated medical records and information from Dr. Plumlee. The medical records reflected Dr. Plumlee's assessments as of January 9, 2020, including: (1) Aphasia as late effect of CVA; (2) Chronic pain syndrome; (3) diabetes mellitus, type 2, uncontrolled with neurologic complications; and (4) CRPS type 1 of the left lower extremity.

43.     The LINA-requested form completed by Dr. Plumlee on January 9, 2020, reflected Dr. Plumlee's opinion that Plaintiff did not have the physical ability to work throughout an 8-hour workday. In particular, Dr. Plumlee endorsed that Plaintiff could do no lifting, carrying, pushing/pulling and was restricted to "activities of daily living" only with respect to reaching, fine manipulation, and grasping.

44.     Dr. Plumlee further stated, by way of elaboration requested by LINA, as follows:

> She is essentially completely disabled at this point due to complex regional pain syndrome. This appears permanent. ADL's only. She still has some confusion and aphasia since her CVA. She is disabled.

45.     In late February 2020, a LINA nurse conducted another file review of Plaintiff's LTD claim.

46.     The LINA nurse decided that Dr. Plumlee's endorsed restrictions about Plaintiff's ability to work were "not supported."

47.     The nurse recommended that Plaintiff's claim and functional capacity be reviewed by an occupational medicine physician.

48.     On March 11, 2020, a LINA-employed occupational medicine physician, Dr. Eduardo Bernardino Rizo, reviewed Plaintiff's LTD claim file.

49.     Dr. Rizo has never treated or examined Plaintiff.

50.     After reviewing the accumulated LINA-maintained claim file, Dr. Rizo issued the following assessments:

- Chronic left leg pain, status past knee replacement and revision – no functional limitations
- Aphasia, status post CVA – no functional limitations
- Complex regional pain syndrome – no functional limitations

51. Dr. Rizo did not explain or reconcile his conclusions about Plaintiff's functional limitations with the fact that LINA, on the same medical information and records, had repeatedly found Plaintiff to have functional limitations that precluded her from performing the duties of her own occupation.

52. Dr. Rizo did not explain or reconcile his conclusions about Plaintiff's functional limitations with the SSA's findings that Plaintiff was disabled due to medically-determinable impairments causing symptoms of pain, understanding and memory limitations, sustained concentration and persistence limitations, and social interaction limitations.

53. Dr. Rizo did not consider Plaintiff's understanding and memory limitation, impaired concentration, or persistence limitations.

54. Following receipt of Dr. Rizo's report, LINA requested a transferable skills analysis ("TSA") from its vocational department.

55. The TSA was based on Dr. Rizo's opinion that Plaintiff had no restrictions and limitations. The TSA did not include consideration of Plaintiff's understanding and memory limitation, impaired concentration, or persistence limitations.

56. Because the input to the TSA was wildly incorrect, the TSA's output was absurd. For instance, the TSA reflected that Plaintiff could perform the duties of her own-occupation even though there had be no improvement in Plaintiff's conditions or symptoms.

57. By letter dated March 26, 2020, LINA notified Plaintiff that it was denying her LTD claim beyond May 21, 2020 because, in LINA's view, she no longer remained disabled as defined in the LTD Policy.

58. By letter dated March 27, 2020, LINA also notified Plaintiff that her life insurance waiver of premium claim was closed because she was no longer approved for disability benefits.

59. Plaintiff appealed LINA's decision by handwritten note dated April 10, 2020.

60. In response to Plaintiff's appeal, LINA sought to have another file review done by another occupational medicine doctor. Upon information and belief, LINA asked a third-party vendor, Exam Coordinators Network ("ECN"), to provide the file review.

61. The requested file review was done by Dr. Marvin Pietruszka on or about May 21, 2020.

62. Dr. Pietruszka prepared a report dated May 21, 2020, and he provided an addendum to his report on June 5, 2020.

63. Dr. Pietruszka's assessments were as follows:

- Chronic left knee pain: No clear clinical evidence of functional deficit – R/Ls not supported.
- Aphasia as late effect of CVA: No clear clinical evidence of functional deficit – R/Ls not supported.

64. Dr. Pietruszka's "no clear clinical evidence" reference is a euphemism for no "objective" findings. But the LTD Policy does not condition the receipt of LTD benefits upon the presentation of "objective" findings.

65. Dr. Pietruszka did not specifically address Plaintiff's CRPS. In particular, Dr. Pietruszka did not acknowledge Dr. Plumlee's assessment that Plaintiff's CRPS appeared to be permanent.

66. Dr. Pietruszka did, however, generally dismiss Plaintiff's pain. Dr. Pietruszka stated "pain is not a true functional limitation."

67. Dr. Pietruszka did not explain or reconcile his conclusions with the fact that LINA, on the same medical information and records, repeatedly found Plaintiff to have functional

limitations which precluded her from performing the duties of her own occupation.

68. Dr. Pietruszka did not explain or reconcile his conclusions with that of the SSA, which found that Plaintiff was disabled due to medically-determinable impairments causing symptoms of pain, understanding and memory limitations, sustained concentration and persistence limitations, and social interaction limitations.

69. Dr. Pietruszka did not consider Plaintiff's understanding and memory limitations, impaired concentration, or persistence limitations.

70. By letter dated June 17, 2020, LINA notified Plaintiff that it had determined to uphold its adverse determination on her LTD claim based on the file review done by Dr. Pietruszka.

71. By letter dated July 1, 2020, LINA fully and finally denied Plaintiff's appeal. The denial rationale stated therein substantially tracked Dr. Pietruszka's assessments.

72. LINA's reliance on the file review done by Dr. Pietruszka is unreasonable and reflects an unprincipled review.

73. Dr. Pietruszka never treated or examined Plaintiff.

74. Dr. Pietruszka is not a pain management specialist or a physiatrist (with a pain subspecialty).

75. Dr. Pietruszka was not the most appropriately-trained doctor in field of medicine principally involved in Plaintiff's LTD claim, i.e., chronic pain syndrome secondary to CRPS of the left leg.

76. Following LINA's issuance of its final denial letter, Dr. Plumlee called Dr. Pietruszka to discuss Plaintiff's claim appeal. Dr. Plumlee reiterated to Dr. Pietruszka that Plaintiff was experiencing CRPS with pain and weakness. Dr. Plumlee specifically opined that Plaintiff was totally disabled.

77. Following LINA's issuance of its final denial letter, Plaintiff was seen by Michelle Green, Physician Assistant ("PA"). The clinic note for the office visit on August 21, 2020 was submitted to LINA.

78. PA Green's physical examination confirmed abnormal range of motion in Plaintiff's left knee due to pain. PA Green's assessment was chronic pain of left lower extremity secondary to chronic regional pain syndrome.

79. A LINA nurse reviewed PA Green's office note and decided it did not warrant the reopening of Plaintiff's LTD claim.

80. By letter dated August 31, 2020, LINA advised Plaintiff that PA Green's information did not change its prior adverse decision.

81. In reaching its adverse decision and during the course of its investigation prior to, LINA failed to apply the terms of the LTD Plan and LTD Policy to Plaintiff's claim, conducted a skewed and self-interested investigation/evaluation without treating Plaintiff's interest with equal regard to its own, mischaracterized and cherry-picked record information to support to a claim denial while de-emphasizing or disregarding record information supportive of Plaintiff's claim, failed to consider whether Plaintiff could perform the *non-exertional* duties of her own occupation or any-occupation she was purportedly qualified for, and unreasonably relied on the opinions of inappropriately qualified file-reviewing physicians who conducted materially flawed reviews.

82. Plaintiff has exhausted her administrative remedies.

### IV.   Statement of Claims

#### First Claim

#### ERISA – Improper Denial of Benefits

83. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

through 82 of this Complaint as though set forth at length herein and further alleges:

84. At all relevant times, the terms of the LTD Plan and LTD Policy required payment of LTD benefits to Plaintiff due to her debilitating impairments.

85. LINA's failure to pay LTD benefits to Plaintiff beyond May 21, 2020, is contrary to the terms of the LTD Plan, and is wrong, incorrect, and/or arbitrary and capricious.

86. In determining Plaintiff's claim, LINA failed to provide her with a full and fair review as required by law, thereby making its final adverse claim decision wrong, unreasonable, and not supported by the competent and substantial evidence.

87. Plaintiff seeks a declaration from this Court that she is entitled to the LTD benefits due her under the terms of the LTD Plan and LTD Policy, in the amounts and for the duration consistent with the terms of the LTD Plan and LTD Policy, and an Order that all future disability benefits (and related other employee benefits, including basic and voluntary life insurance coverage) should be paid and/or maintained pursuant to the terms of the LTD Plan, LTD Policy, and life insurance policy.

88. Alternatively, Plaintiff seeks a declaration from this Court that LINA's final claim decision is not the product of a full and fair review, and a related Order therefore reinstating her LTD/life insurance waiver claims, and remanding the matter to LINA for a full and fair review.

89. By reason of LINA's incorrect, unreasonable, and/or arbitrary and capricious claim decision, Plaintiff has been forced to retain an attorney to secure the LTD benefits due her under the terms of the LTD Plan, for which Plaintiff has and will incur attorney fees and costs of this action pursuant to 29 U.S.C. § 1132(g)(1). Plaintiff is entitled to recover the reasonable attorney fees and costs of this action pursuant to 29 U.S.C. § 1132(g)(1).

**WHEREFORE**, Plaintiff Jeannette A. Johnson demands judgment against Defendant Life

Insurance Company of North America, as follows:

(1) for a declaration that LINA improperly terminated her LTD benefits, and that she is entitled to receive the amount of benefits due under the terms of the LTD Plan that have not been paid, together with prejudgment and post-judgment interest thereon;

(2) for a declaration that all future long term disability benefits and related other employee benefits, including basic and voluntary life insurance coverage, be paid and/or maintained pursuant to the terms of the LTD Plan; and/or

(3) for a declaration that LINA improperly terminated her LTD benefits and denied her a full and fair review, and that as a consequence thereof, her claim should be reinstated and remanded for further claims procedures;

(4) for the costs of this action, and Plaintiff's attorney fees pursuant to 29 U.S.C. § 1132(g); and

(5) for such other and further relief as may be deemed just and proper by the Court.

**Respectfully submitted,**

**SHOOK & JOHNSON, P.L.L.C.**

By:   **s/ Jonathan E. Shook**
      **Jonathan E. Shook, OBA #17343**
      **7420 S. Yale Ave.**
      **Tulsa, OK 74136**
      **Telephone: (918) 293-1122**
      **Facsimile: (918) 293-1133**

      **ATTORNEY FOR PLAINTIFF**